IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

UNITED STATES OF AMERICA

V.  CAUSE NO. 3:17-cr-00098-NBB-RP

JOSE ALEJANDRO CANELO-VEGA

### MOTION TO SUPPRESS EVIDENCE

Defendant, Jose Alejandro Canelo-Vega (Mr. Canelo), by and through counsel, respectfully requests that all physical evidence stemming from the traffic stop be suppressed based upon law enforcement officers' violation of the Fourth Amendment of the United States' Constitution and the dictates of *Terry v. Ohio*, by failing to have adequate reasonable suspicion to stop the vehicle in the first place. In support of this Motion, Mr. Canelo would show as follows:

### Statement of Facts

On August 4, 2017, at approximately 9:30 a.m., a neighbor called the complainant, a homeowner in Southaven, Mississippi, informing her that a truck was parked near her barn. Pam Bryant, the complainant, did not see white truck. During a telephone interview on September 27, 2017, Ms. Bryant stated she was not present at her home when she called the police. All of the information relayed to the police was information provided to her by her neighbor, Stacey Barnett, who was also interviewed by phone on September 27, 2017. Ms. Barnett lives across the street from Ms. Bryant, approximately 100 yards away from the barn. She does not remember giving a detailed description of the vehicle to Ms. Bryant, only that it was a white truck. She stated that a police officer came by her house after the phone call and showed her a picture of a truck on a cell phone, which she stated was not the correct one. Ms. Barnett never made any mention of a license

plate number, a description of the driver or occupants of the vehicle, or any illegal activity. Ms. Bryant contacted the police after her phone call with Ms. Barnett.

The officers arrived at the main road closest to the residential area of the call, and then stopped Mr. Canelo at an intersection two miles away, claiming that his vehicle matched the description provided by the neighbor.

After a second officer arrived to translate, Mr. Canelo explained that he "didn't know what was going on, and did not know why the police had stopped him." The purpose of the stop was highly unclear, evidenced by Mr. Canelo having to ask three times why he was being stopped, even though the officer claims that he explained the purpose of the stop in Spanish, "from beginning to end," and "in full detail." Mr. Canelo provided the officers with identification and tag registration showing that he owned the vehicle, and explained that he drives on that particular road to travel from his home to work.

Rather than conclude the stop after this reasonable explanation provided by Mr. Canelo, or to submit a picture for identification of the truck to Ms. Barnett, the officer claims that he then began to notice behavior that prompted several searches. The officer claims that Mr. Canelo's speech was slurred, yet a consensual breathalyzer test presented a 0.00% presence of alcohol; furthermore, the officer claims that Mr. Canelo seemed nervous and had shaky hands, leading the officer to think that Mr. Canelo was smuggling drugs, yet a consensual search of the truck bed yielded no results and nothing suspicious. Finally, after these two searches, one of the officers chose to call in a K-9 unit. There was an alert as to the passenger side door, yet one of the officers searched inside the compartment of the center console and found not drugs, but a firearm. A National Criminal Information Center (N.C.I.C.) search of the firearm revealed that the firearm was not stolen; however, the officers still continued the search, found that Mr. Canelo had no

driver's license from either the United States or Mexico, and arrested him an hour after the stop had begun. Mr. Canelo was arrested for the minor traffic violation of having no driver's license.

## Argument

Generally, a warrantless seizure is presumptively unreasonable in the interest of protecting an individual's fundamental right to privacy against a State's invasion. *United States. v. Jacobsen*, 466 U.S. 109, 114 (1984). An exception to this rule involves the brief detention of an individual when an officer has reasonable suspicion to believe that crime is afoot. *United States v. Roch*, 5 F.3d 894, 897 (5th Cir. 1993) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The basis of this reasonable suspicion must be supported by specific and articulable facts. *Id*. at 21. Such a detention is a brief invasion of an individual's protected right to privacy until the officer's reasonable suspicion is dispelled. *Id*. at 30. The reason for the crucial importance of requiring officers to base such an invasion on reasonable suspicion is to "safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523, 528 (1967).

A traffic stop that is not conducted in the course of an arrest is analogous to the type of detention described in *Terry*; *see also Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). In order to fulfill the reasonable suspicion standard, there is a two-pronged test in which the traffic stop must be 1) justified at its inception, and 2) "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quoting *Terry*, 392 U.S. at 90-91). The test for determining whether or not an officer had enough reasonable suspicion to justify a stop is a totality of the circumstances inquiry. *United States v. Zapata-Ibarra*, 212 F.3d 877, 881 (5th Cir. 2000).

**I.     The 911 phone call was insufficient to give the officers reasonable, articulable suspicion to justify a traffic stop.**

Although an alert coming from a tip or 911 call can be enough to justify a stop based on reasonable suspicion, the tip cannot be a mere description that any observer could provide of anyone engaged in any innocent or casual activity; there must be some indication that criminal activity is taking place. *Alabama v. White*, 496 U.S. 325, 330-32 (1990). An unreliable or insufficient tip requires further corroboration or investigation by an officer before a search or seizure may take place. *Id*. The applicable factors to consider when deciding whether a particular tip provides a sufficient basis for an investigatory stop include:

1. the credibility and reliability of the informant,
2. the specificity of the information contained in the tip,
3. the extent to which the information in the tip can be verified by officers in the field, and
4. whether the tip concerns active or recent activity.

*United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007) (quoting *United States v. Gonzalez*, 190 F.3d 668, 672 (5th Cir. 1999)). Based on these factors, Mr. Canelo submits that there was an insufficient basis to justify a traffic stop of his vehicle.

**A.     Credibility and reliability**

In this case, Pam Bryant placed the 911 phone call that led to Mr. Canelo's arrest. Ms. Bryant did not see the suspicious vehicle at the barn, nor did she have any personally perceived information about the vehicle. Everything Ms. Bryant knew about the vehicle came from her neighbor, Stacey Barnett. Stacey Barnett did not contact the police.

In a factually similar Supreme Court case, *Navarette v. California*, the complainant contacted 911 about a reckless driver that almost ran the complainant off the road. 134 S. Ct. 1683,

1687 (2014). The Court found the caller credible because the caller had firsthand, eyewitness knowledge of the incident, i.e. she had been the person run off the road. *Id*. at 1689.

The Fifth Circuit has also discussed this prong regarding 911 phone calls and found that *eyewitness* accounts are generally credible  The citizen *eyewitness's* account is credible because *eyewitnesses* "are seldom involved with the miscreants or the crime. *Eyewitnesses* by definition are not passing along idle rumor, for they either have been the victims of the crime or have otherwise seen some portion of it." *United States v. Bell*, 457 F.2d 1231, 1238–39 (5th Cir. 1972) (emphasis added).

Here, the person who contacted police, Ms. Bryant, was not an eyewitness to the suspicious vehicle. Rather it was information passed on by a neighbor. Ms. Bryant did not have any firsthand knowledge about the suspicious vehicle located on her property. Therefore, this factor weighs in favor of finding the tip was unreliable and insufficient.

B.      **Specificity of the information in the tip**

The details reported to the police by Ms. Bryant were too general to justify the stop. Ms. Barnett stated that she told Ms. Bryant the suspicious vehicle was a "white truck." She does not remember being specific about the make, model, license plate, windows, or bed of the truck. Ms. Bryant also stated that she did not remember giving specific details other than it was a "white truck."

In *Navarette*, the Humboldt County dispatcher relayed a tip from a 911 caller to the Highway Patrol as follows: "Showing southbound Highway 1 at mile marker 88, Silver Ford 150 pickup. Plate of 8–David–94925. Ran the reporting party off the roadway and was last seen approximately five [minutes] ago." 134 S. Ct. at 1687. The Supreme Court found the 911 call sufficiently reliable because of the caller's firsthand, eyewitness knowledge of the wrongdoing.

Id. at 1689; *See also Illinois v. Gates*, 103 S.Ct. 2317 ("[An informant's] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case"). The Supreme Court noted the caller's specificity as to details: mile marker, direction the vehicle was heading, the license plate number. *Navarette*, 134 S.Ct. at 1689.

The Fifth Circuit has likewise given more credence to a more thoroughly detailed 911 phone call. In *United States v. Gomez*, a concerned citizen called 911, reporting that an unidentified Hispanic man around twenty years of age and weighing 175 to 180 pounds brandishing a "black and gray" pistol and threatening individuals at a "little yellow gas station" on the "corner of Ceaser Chavez and Comal." 623 F.3d 265, 267 (5th Cir. 2010). The called also gave the operator the description of a vehicle, along with a license plate number, and identified two occupants in the vehicle. *Id*. This information was sufficient in detail to justify an investigatory stop. *Id*.

First, the complainant, Ms. Bryant, did not personally observe the vehicle outside of the barn. She learned the information from her neighbor, Ms. Barnett, who gave a generalized description of the vehicle over 100 yards away from her house. Second, Ms. Barnett does not remember giving any specific make or model of the truck, nor does she remember the truck having tinted windows, a bed topper, or hitch. She did not identify the driver's race or sex. It would have been difficult, if not impossible for her to hear the muffler on the truck because she said the suspicious vehicle was "parked" near the barn. Finally, there was no indication that criminal activity was afoot. The officers stopped a white truck a few miles away from the owner's property. Here, the specificity was lacking, and nominal at best. This factor weighs in favor of Mr. Canelo.

      **C.**      **The extent to which the information in the tip can be verified by officers in the field.**

The officers made no effort to confirm whether Mr. Canelo's vehicle was in fact the vehicle described by asking the neighbor to verify this information. From the interview with Ms. Barnett, one officer did show her a picture of a similar truck that had been stopped in the area which she said was not the truck at the barn. Ms. Barnett stated that she did not see any other pictures from the officers nor was she contacted again.

Furthermore, Mr. Canelo had a reasonable explanation as to why he was on that road in that area and at that time: he lived in that area and was driving to work. Mr. Canelo did not give the officer's a reason to pull him over, other than that his truck matched the vague description of "white truck" relayed by Ms. Barnett to Ms. Bryant. The officers, at the time of the stop, could not have known that he was driving without a license. Because the officer did not attempt to verify the information nor did the officers attempt to follow up with the only eyewitness or complainant after Mr. Canelo's arrest, this factor weighs in favor of suppression.

      **D.**      **Whether the tip concerns active or recent activity.**

In this case, the phone call did concern recent activity. However, the activity was not an ongoing emergency nor did it involve felonious activity. The vehicle was reported as being suspicious, but nothing was reported at the barn to be stolen, broken, or otherwise out of order. Mr. Canelo lived right across the state line in Memphis. He worked construction in Southaven, near Church Road. While driving from Memphis to Church road, he drives near the location where the suspicious vehicle was seen. He has given a consistent explanation as to why he was in the vicinity of the incident. This factor too, weighs in favor of suppression.

**Conclusion**

Taking the factors into account and using a totality of the circumstances approach, at least three of the four *Martinez* factors weigh in favor of an insufficient basis for a traffic stop. Not only did the complainant, Ms. Bryant, not have first hand knowledge of the incident, but the information she relayed to the 911 dispatch was not specific enough to provide "the officers a reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *See United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008) (quoting *United States v. Hensley*, 469 U.S. 221, 227 (1985).

Because the basis for the initial stop was not supported by a reasonable articulable suspicion, the evidence should be suppressed. A stop that is unlawful at its inception, however, cannot be validated by what the subsequent search yields. *Wong Sun v. U.S.* 371 U.S. 471, 484 (1963).

        Respectfully submitted,

        JOSE ALEJANDRO CANELO-VEGA

        /s/ Gregory S. Park
        GREGORY S. PARK, MSB No. 9419
        Assistant Federal Public Defender
        1200 Jefferson Avenue, Suite 100
        Oxford, Mississippi 38655
        Telephone: (662) 236-2889
        Fax: (662) 234-0428
        greg_park@fd.org

**CERTIFICATE OF SERVICE**

I, Gregory S. Park, attorney for the Defendant, Jose Alejandro Canelo-Vega, do hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and that the following party will be notified electronically of filing:

>Hon. Jamiel M. Wiggins, AUSA
>jamiel.wiggins@usdoj.gov

Dated this the 2nd day of October, 2017.

>/s/ Gregory S. Park_____
>GREGORY S. PARK
>Assistant Federal Public Defender